## DAVID J. GALE *v.* TOWN OF JAMAICA.

### *Soldiers. Re-enlistment. Bounty.*

The defendant town, at a meeting duly warned and holden on the 17th day of December, 1863, voted to "raise and give a bounty of five hundred dollars to each volunteer to fill the quota of this town under the last call of the President for three hundred thousand" volunteers. The plaintiff originally enlisted from said town, and on the 15th day of said December, re-enlisted, and was mustered in on the 16th, at Brandy Station, Va., but was not credited to any particular town until the 20th of said month, when he heard of the action taken by said town on the 17th, and thereupon procured his enlistment to be put to its credit, and the Adjutant General of this state received notification of said credit before the town had filled its quota, but the selectmen of the town did not know that he stood to its credit, until they were so notified by him in person, January 1st, 1864, when they had otherwise filled the quota. *Held*, that the plaintiff is entitled to recover the five hundred dollars from the town.

There was no requirement of notice to the town, but if notice was necessary, all that can be claimed is that reasonable notice should have been given, and considering the situation of the soldier, that he was in active service, in the enemy's country, and the facilities for communication, there was no unreasonable delay.

The soldier having caused himself to be credited upon the quota of the town in the Adjutant General's office several days before the quota was filled, it cannot be said that the town officers were misled by any neglect on the plaintiff's part.

If there was want of diligence on the part of any one in this respect, it was on the part of the town officers. They knew that soldiers in the field could re-enlist to the credit of the town, and had reason to suppose they would, upon the faith of the offer the town had made, and that the Adjutant General would have the earliest information of such enlistment. They should have communicated with the

Adjutant General's office, where they could have obtained reliable information as to who and how many were credited to the town if they wished to avoid obtaining more than the requisite number.

ASSUMPSIT to recover a town bounty. Plea, the general issue, and trial by the court, by consent of parties, at the Setember Term, 1864, BARRETT, J., presiding.

It appeared on trial that when a man is mustered in, a copy of the enlistment contract is forwarded to the Adjutant General's office, stating the name of the town in which he resides, and the quota upon which he is to be credited. The first notice the selectmen actually had that those men who re-enlisted in the field were mustered in to the credit of Jamaica, was received on the 1st day of January, 1864, and this was given personally by the men themselves. No notice was, or is ever given to the towns by the Adjutant General of the credits given to a town, but if a man is rejected that is sent in, he gives notice of such rejection. The other material facts are fully set forth in the opinion of the court. The court *pro forma* rendered judgment for the defendant, to which the plaintiff excepted.

*Butler & Wheeler, C. N. Davenport* and *E. L. Waterman*, for the plaintiff.

The vote of the town was an offer of a reward of $500 to any person who should actually become a volunteer to fill that quota and became a binding contract with any person who performed the condition of the offer.

In *Williams* v. *Camardine*, 4 B. & Ad. 621 ; 24 E. C. L. 127, there was an advertisement offering a reward of £20 to him who would give information that would lead to the conviction of a murderer. DENMAN, Ch. J., said "The plaintiff by having given information, &c., has brought himself within the terms of the advertisement and therefore is entitled to recover." LITTLEDALE J., said " the advertisement amounts to a general promise to give a sum of money to any person who shall give information which might lead to the discovery of the offender. The plaintiff gave that information." PARKE, J., said " There was a contract with any person who performed the condition of the advertisement." PATTERSON, J., said,

" I am of the same opinion, we cannot go into the plaintiff's motives." In *Symmes* v. *Frazier*, 6 Mass. 344, the same doctrine was recognized. See also *Wentworth* v. *Day*, 3 Met 352.

In *Freeman* v. *Boston*, 3 Met. 56 there was an offer of $500. reward to any person who would give information that would lead to the conviction of an incendiary. SHAW, Ch. J. said, "The principle on which this action is brought is now well settled. It is this : The offer of a reward or compensation either to a particular person or class of persons, or to any and all persons, is a conditional promise, and if any one to whom such offer is made shall perform the service before the offer is revoked, such performance is a good consideration, and the offer becomes a legal and binding contract." See also *Loring et al.* v. *Boston*, 7 Met. 409.

The quota of the town under that call was 28. The plaintiff enlisted, was mustered into service, and credited to the quota of the town before December 22d, and when only twelve volunteers, including himself, had been enlisted, mustered, and credited upon that quota. This was a full performance of the condition of the defendant's offer, and entitled the plaintiff to the reward of $500. No notice of the plaintiff's enlistment and muster was required to be given to the defendant, before he actually gave notice himself January 1st, 1864. 3 Chitty, Pl. 133—5. But if earlier notice was necessary, the information which the defendant's officers had and might have had from the Adjutant General's office was sufficient. REDFIELD, J. 15 Vt. 186 ; DAVIS, J. 19 Vt. 425.

*A. Stoddard*, for the defendant.

No contract between the parties is proved. The town voted on the 17th of December, to pay $500. <sup>r</sup>to such persons as should enlist to fill their quota of three hundred thousand. If this vote is regarded as an offer or proposal on the part of the town to the plaintiff, it was not binding till accepted. Chitty on Con. 9–12–14 ; Kent's Com. 477. *Grant* v. *Hill*, 1 Starkey, 10 (2 E. C. L. 272 ; *McIver* v. *Richardson*, 1 M. & S. 557.

There must be some limit to the liability of the town under this vote. We submit that this liability is confined to those who gave

notice of their enlistment and acceptance of the proposition to the proper agents of the town, and were accepted by them; and to the number of men required for their quota. The time for filling the quota was short and vigilance was required to secure the men. The agents of the town could not be supposed to know who might enlist in the field or elsewhere to their credit, nor did they know that those who re-enlisted would be placed to their credit on that call. The plaintiff enlisted and was mustered into service on the 16th of December, the day previous to the meeting that voted the bounty. Consequently the enlistment and muster were not an acceptance of the offer made by the town.

But we insist that the vote of the town is to receive a construction consistent with facts, then known to exist, and should not be regarded as an indiscriminate offer to every body, and that no proposal was, in fact, made to the plaintiff. It was a matter of public notoriety that the selectmen were recruiting officers, and they were the agents of the town. The vote should be construed as an authority to the selectmen to pay the bounty to the men whom they should enlist, or who should be enlisted with their concurrence. No person, therefore, is entitled to the bounty except such as were enlisted and mustered into service with the knowledge and consent of the selectmen. To adopt any other rule would be pernicious, conducive of fraud, and ruinous to the town. These extraordinary powers should be strictly construed.

The opinion of the court was delivered by

PIERPOINT, Ch. J. It appears from the case, that in the fall of 1863, the President of the United States issued a proclamation calling for 300,000 men to serve in the armies of the United States. Under this proclamation, the Governor of this State, through the Adjutant General, ascertained the number of men which each town in the state was required to raise, according to the number of men therein subject to military duty, to make up the proportion of the 300,000 which this state was called upon to furnish, and issued General Order No. 2, therein specifying the number which each town was to raise to fill their quota under said call, and also the number

of men, if any, that any town was deficient under the draft; and called upon the several towns to fill their quotas under the call, and also to make up their deficiency under the draft.    The number assigned to the town of Jamaica (defendant) as their quota of the 300,000 was twenty-eight men, and the number of their deficiency under the draft was eleven men.

In order to obtain the requisite number of men, the town, at a meeting duly warned and holden on the 17th day of December, 1863, voted to raise and give a bounty of five hundred dollars to each volunteer to fill the quota of the town under the last call of the president for three hundred thousand men.

Prior to this time, the plaintiff, who was an inhabitant of Jamaica, had enlisted under a previous call of the president, and his term of service had nearly expired; he had heard that the town was paying a bounty of $100. or $7.00 per month at the soldier's election, under a vote of the town passed in November, 1863.   He had also heard that the town contemplated offering a larger bounty for volunteers to fill their quota under the call for 300,000 men.

On the 15th of December, 1863, he was serving in the field and stationed at Brandy Station, in Virginia, and on that day he re-enlisted, and on the 16th of December, was mustered in.    At that time he did not credit himself to the quota of any town, but reserved the right to do so, at a future time.   On or before the 20th of December, he learned that the town of Jamaica had offered a bounty of $500. for volunteers to fill its quota; he thereupon, on the said 20th day, had himself placed to the credit of said town, on their quota of the 300,000 men.   He did not give the town notice of the fact until the 1st day of January thereafter, when he did notify them.   It appears however, that the practice was, when a person was mustered in to the credit of any town, to immediately send notice thereof to the Adjutant General's office, and from an inspection of the copy from his office, that is in the case, it appears that such notice of the plaintiff's enlistment, and the town to which he was to be credited, was sent to that office, and that he was then credited on the quota of the town, some days before their quota was actually filled.

As the town however, did not know of the fact, they proceeded to procure more men than was required to fill their quota of the 300,000 although they did not obtain any more than was necessary to fill that and their deficiency under the draft, including the plaintiff and the ten others who enlisted with him in the field.

The fact that the plaintiff was mustered in the day previous to the passage of the vote, we think can make no difference with respect to his right to recover. The defendant offered $500. to each volunteer to fill their quota, and it is wholly immaterial whether the volunteer enlists the day before or the day after the offer is made, so long as he stands in a position where he has the right to apply himself, and does apply himself upon their quota where the application is made he comes within the offer; he is then one who has volunteered to fill their quota, and is passed to their credit as such.

But it is insisted that the plaintiff cannot recover, because he did not give notice to the town that he had enlisted to their credit. The town made a general and public offer, there are no conditions or limitations attached to it, except that the volunteer shall apply upon the quota. There is no requirement of notice, and no limitation as to time, or place of enlistment, or the person who shall enlist him. But if notice was necessary, all that can be claimed is, that reasonable notice should have been given, and what would be reasonable notice must depend upon the place where the plaintiff was, and the situation and business he was in; he was in the enemy's country and engaged in active service. In view of the distance, and the facilities and opportunity of the soldier so situated to communicate with his home, we think that ten days was not an unreasonable delay. Again the defendant had reason to expect that soldiers in the field would act upon their offer and enlist to their credit. The officers of the town knew that the term of enlistment of many of them was about to expire, and that the government was holding out strong inducements to them to re-enlist, and that they were doing so. They had also taken measures to ascertain, and knew that if any in the field did enlist to the credit of the town they would apply upon their quota. They were so situated that they could ascertain almost

daily how their account, as to their quota, stood at the Adjutant General's office; and it was from that source alone that reliable information could be obtained.

When these things are considered in connection with the fact that the plaintiff had actually caused himself to be credited upon the quota of the town in the Adjutant General's office, before their quota was half filled, and several days before the requisite number was obtained, we think it cannot now be said that the officers were misled by any neglect on the part of the plaintiff. If there was want of due diligence on the part of any one in this respect, it was on the part of the officers of the town. Having reason to suppose that soldiers in the field would re-inlist to their credit, and upon the faith of the offer the town had made, and knowing that if they did, the earliest and only reliable information on the subject would be communicated to the Adjutant General's office, they should have informed themselves as to how many and who were in fact credited upon that quota to make up the twenty-eight, if they wished to avoid obtaining more than the requisite number.

This view of the subject renders it unnecessary for us to pass upon some of the questions discussed in the argument.

Judgment of the county court is reversed and judgment rendered for the plaintiff for the $500. and interest from the time the demand was made, to be computed by the clerk, and cost.