Hon. ASAHEL PECK,
Hon. BENJAMIN H. STEELE, } Assistant Judges.
Hon. JOHN PROUT,

---

## Seth Hill *v.* Town of Eden.

*Contract. Bounty. Enlistment. Reward. Assumpsit. Towns.*

Upon a vote to pay $300 to "the first six men who shall enlist into the service of the United States to save the draft," the first six to perfect their enlistments by a muster into the service, are the six entitled to the benefit of the offer, even though others signed enlistment contracts before them.

The words in the vote, "*to save the draft*," have no force, no draft being at the time impending, and all enlistments to the credit of the town being equally calculated to save a draft.

If the town erroneously supposed the draft was still pending, and decided it necessary to raise six men, and voted to pay them a bounty, they can not escape paying the men upon the ground that it turned out to be unnecessary.

The vote to pay the first six to enlist, was a general promise, and not limited to men at home or to men procured by the selectmen.

The town authorities were not justified in deciding that men enlisted at home were the "first six," until they had had time and had used proper effort to learn of enlistments in

the field, and, there being soldiers from the town in the Gulf department, they should wait to hear from there.

The plaintiff, being one of the first six to enlist, is entitled to recover, no fault being chargeable upon him by which the town was misled. The mere failure of the plaintiff to inform the town of his enlistment, is not such a fault, it not appearing but the town might have learned of it on inquiry at the office of the adjutant general, to whom, it is to be presumed, the enlistment was officially reported.

*Semble* that the plaintiff, to avail himself of a general and public offer of a reward or bounty to the first six to do a particular act, need not prove that he became one of the six in reliance upon the offer. Probably he is not bound to show anything beyond the fact that he has done all that the offer itself stipulates as the condition of the reward. However this may be, it is, in any view, enough if the act is done in expectation of the reward, although the party doing the act, has no precise knowledge of the terms of the offer, or even is ignorant of that offer or vote, upon which he is entitled to the reward.

ASSUMPSIT to recover a town bounty. Plea, the general issue. Trial by jury, May term, 1868, WILSON, J., presiding.

All the facts with reference to the several calls of the president for men to serve in the armies of the United States, the records of the town meetings of the town of Eden of December 8, 1863, December 30, 1863, and August 13, 1864, the quota of said town under each call, the deficiency under the draft, the surplus, the general orders from the office of the adjutant and inspector general of the state of Vermont, the references to the adjutant and inspector general's reports, the order of November 6, 1863, respecting the draft, the re-enlistment and muster in of five men from company D of the 5th regiment, at Brandy Station, December 16, 1863, to the credit of said town, the testimony of Henry D. Bradley under objection, are the same as stated in the report of the case, *Steinberg* v. *Eden, ante,* page 187.

No question was made as to the sufficiency of the warnings, or the regularity of the proceedings, of either of said town meetings.

The plaintiff introduced evidence showing that at and previous to January 5, 1864, he was in the military service in the 8th regiment of Vermont volunteers, under a term of enlistment that was about to expire ; that previous to his re-enlistment he had heard of the vote of said town of Eden to pay a bounty of three hundred dollars to each soldier who would enlist to the credit of said town of Eden, and, relying upon that, and being assured by his superior officers that he would receive this bounty of three hundred dollars, on the 5th day of January, 1864, he re-enlisted in company A of the 8th regiment, and within a short time after, and

before the 10th of January, he directed his name to be put to the credit of the town of Eden.

The plaintiff introduced as a witness Capt. Moses McFarland, who testified that at the time of said re-enlistment he was in command of said company A, and, at the request of the plaintiff, he wrote to the selectmen of said town of Eden, notifying them of the re-enlistment of the plaintiff to the credit of said town, and that.he (the plaintiff) claimed of the town a bounty of three hundred dollars, by reason of such re-enlistment. This witness could not state the exact date at which he wrote this letter, but testified that it was in the month of January, 1864.

The plaintiff testified that, within a short time of said re-enlistment, and between the 7th and 10th of the same January, he also wrote to the selectmen, giving them the same notice, and placed the letter in the mail of said regiment himself, to be forwarded to said selectmen; and afterward, not hearing from the selectmen, and after the return of Col. Stephen Thomas, commanding said regiment, who had been absent in Vermont at the time of said re-enlistment, he requested Col. Thomas to write also to the selectmen and give them the same notice; and that subsequently, when he was at home with his regiment on their veteran furlough in April, 1864, he notified the selectmen in person that he had re-enlisted to the credit of said town and claimed his bounty.

The selectmen of Eden, in filling the quota of said town upon the call of July 18, 1864, claimed the benefit to said town of the enlistment of the plaintiff and the others who had re-enlisted in the field, in making up the credit of fourteen surplus men to diminish the quota of seventeen men under that call.

It was conceded that, if the plaintiff did not apply upon the quota of said town under the call of October 17, 1863, or the deficiency under the draft, he did, with the others re-enlisted and mustered in the field, count in the surplus of fourteen which went to reduce the quota of said town of seventeen men, under the call of July 18, 1864.

It was also conceded that the selectmen were unable to raise the three men under that call, for the bounties voted by the town August 13, and, in order to fill said quota, were obliged to pay,

upon their own responsibility, one thousand dollars each to the three men so enlisted (which was subsequently refunded by the town), although it appeared that, by a subsequent correction of the computation by the proper authorities, it was only necessary to have enlisted one of the three men enlisted to fill the quota under said call of July 18.

It appeared that the plaintiff, and four men who re-enlisted with him, were the first five enlistments perfected by muster into the United States service after the town meeting of December 30, 1863.

The defendants introduced testimony showing that the selectmen of said town understood the quota of said town under the call of October 17, 1863, and the deficiency under the draft, to be eight men; and that, to supply that deficiency, they relied on the enlistment of Haskell Foster, who was enlisted and mustered to the credit of said town November 14, 1863, and seven other men whom they enlisted, and to all of whom except one they paid a bounty of $300 each, and who were mustered as follows: Joseph Bailey, January 26, 1864; Milton S. Brown, January 26, 1864; Dan Jones, January 18, 1864; Russell Whittemore, January 18, 1864; T. S. Farrand, March 2, 1864; Wilbur F. Griswold, March 2, 1864; Silas J. Moulton, March 2, 1864; Frank Stearns, March 2, 1864; and that all these men had engaged with the selectmen to enlist previous to January 5, 1864, and had signed their enlistment contracts, but their enlistment was not perfected by a muster into the United States service, until the times above set forth.

The defendants also introduced Asa Smith, George Sargent and Simeon Ingalls, who severally testified that they were selectmen of Eden in 1863 and 1864, and never received the letters written by the plaintiff and McFarland in January, and never had notice of the plaintiff's re-enlistment, until a short time after March 21, 1864, when they received notice from the adjutant general to that effect, bearing that date. They also testified that about the same time they received a letter from Col. Thomas, notifying them that the plaintiff with others had re-enlisted to the credit of said town of Eden, and claimed bounty for such re-enlistment. This letter from Col. Thomas contained a clause stating that, if the town of

Eden could not pay these men bounties, he (Thomas) should try and put them where they could get bounties. There was no. proof tending to show that said Thomas was authorized by the plaintiff to inform the town that the plaintiff would put his credit elsewhere. The plaintiff, on cross-examination, was inquired of if he gave Thomas such directions, and he testified that he did not, and that he never saw that letter. It appeared that this letter of Col. Thomas's was written sometime after the plaintiff had placed his credit to the town of Eden.

There was no conflict in the testimony except that the plaintiff, on cross-examination as to the interview with Smith, one of the selectmen, in April, after stating that he claimed the bounty of three hundred dollars, on inquiry, stated that he did not think he had any conversation with Smith about placing his credit to any other town, if the defendants did not pay the bounty, but did tell Smith that, if they did not pay, he should sue the town.

The witness Smith, on the part of the defense, testified that the plaintiff told him that Col. Thomas said, if the town would not pay bounty, he should be credited to some town that would pay, and Smith replied that he supposed the plaintiff could be credited to some other town.

There was no evidence in the case tending to contradict the plaintiff's statement as to the time his enlistment was put to the credit of the defendant town, and it appeared that credit for the plaintiff's re-enlistment had never been changed, but continued for the benefit of the town, as above stated.

The defendants' witness Sargent testified that during the year 1864 the selectmen were in the habit of frequently writing the adjutant general to find out how their credits stood.

The court, upon the evidence as above detailed, directed a verdict for the plaintiff to recover the three hundred dollars with interest, to which the defendants excepted.

*Brigham & Waterman* and *G. W. Hendee*, for the defendants.

If the plaintiff is entitled to recover, it will be because he comes strictly within the terms of one of the three votes of the town.

He can not recover under the vote of December 8, 1863, because he did not apply on the quota to which that vote had reference. The liability of the town is restricted in the vote, and, unless the plaintiff comes clearly within that restriction, he can not recover.

He can not recover under the vote of December 30, 1863. He was not one of the first six men to enlist under that vote. He did not apply on that quota.

He is not entitled to recover under the vote of August 13, 1864. He did not enlist, nor was he mustered or credited, under that vote. This took place more than six months before the vote was passed. This vote only obligated the town to pay a bounty to those who should *thereafter* enlist, etc., and was but a vote of instructions to the selectmen, and the town are bound only by the action of the selectmen under the vote. It was incumbent on the plaintiff, to notify the town within a reasonable time that he had re-enlisted to the credit of the town and claimed the bounty.

These several votes are in the nature of an offer. This offer must be accepted and notice given, before the contract is complete. The minds of the parties must meet, as in the case of ordinary contracts. 2 Par. on Con., ch. 2, § 2, and the cases there cited.

The plaintiff's letter was no notice, as it did not reach its destination, and the plaintiff was not authorized to notify in that way. The notice did not reach the adjutant general's office, until the first two quotas were filled; probably, not until March 21, 1864. The town had no notice till then, and could not have told by inspection of the adjutant general's books what the plaintiff claimed. There were no laches on the part of the town.

To entitle the plaintiff to recover, it must appear that the defendant town had official notice of the plaintiff's re-enlistment and of the credit being given to the town, before the selectmen had otherwise filled their quota and complied with the demands of the government.

If the plaintiff enlisted under one call of the president, but was applied on a deficiency created by a subsequent call, and that without the fault, knowledge or direction of the town, he is not entitled to recover.

If the officers of the town from time to time made inquiries by letter or otherwise of the proper authorities, as to the standing of the town, and used reasonable diligence to obtain this intelligence, and received no reliable or official information of the plaintiff's enlistment to the credit of the town, until after their quota or deficiency was filled, the town are not liable.

If the plaintiff, on the last of April, 1864, notified the selectmen that, if they did not pay him the $300, he should have Gen. Thomas credit him to some town that would pay a bounty, and the selectmen refused to comply with his request, and informed him that he was at liberty to credit himself to some other town, the town are not liable, although the plaintiff did not in fact change the credit.

The testimony of Bradley was admissible.

*Benton & Wilson,* for the plaintiff.

It is not material, on what particular quota the plaintiff in fact applied. He enlisted upon the faith of the offered bounty. He applied to the credit of the town, and the town officers, knowing of his enlistment and his claim to receive a bounty, claimed and received the benefits of his enlistment on their subsequent quota.

The fair construction of the votes of December, 1863, is an offer of a bounty to such soldiers as should apply on the quotas which the town were called on to fill; or, in other words, that the enlistment should go to the benefit of the town.

Even if he did not apply on the quota for which he enlisted, the application by the town of his enlistment to a quota on which they were paying large bounties, was an acceptance of his enlistment, and a waiver of the condition that he should apply on the quota named in the first vote.

Although the right to claim bounties depends entirely upon the votes of the towns, and, without subsequent action of the town, they might or might not have been held on the first vote, the action of the town in August, voting a bounty for such as should apply on the quota of July 18, 1864, entitles the plaintiff to his bounty; for it has been held that it is not necessary that the enlistment should be subsequent to the vote. *Johnson* v. *Newfane,* 40 Vt., 9; *Gale* v. *Jamaica,* 39 Vt., 610.

The opinion of the court was delivered by

STEELE, J.   The town of Eden regularly voted at the meeting of December 30, 1863, " To raise on the grand list $300 each for the first six men who shall enlist into the service of the United States to save the draft." The plaintiff claims that he was one of the first six who enlisted to the defendants' credit, and this suit is brought to recover the promised bounty. It is agreed that the plaintiff was one of the first six men mustered into service to the defendants' credit after the vote. It is also agreed that he was not one of the first six who signed enlistment contracts after the vote. Others signed before the plaintiff, and were mustered in after the plaintiff.

The first question is whether the meaning of the vote was to promise a bounty to the first six who should sign enlistment contracts, or to the first six accepted and mustered into service. The signing of an enlistment contract is but one step toward entering the service. Unless the man is approved and accepted by the government, it amounts to nothing. Until the man is approved and mustered in, he counts upon no quota and is not in the service. If he dies before he is mustered in, his widow draws no pension under the act providing a pension for the widows of soldiers who die in the service. His enlistment is not perfect, until he is accepted by a duly authorized mustering officer. It is not reasonable, to suppose that the town intended to pay bounties to men who did not pass to their credit. The mere signing of the preliminary papers was not the kind of " enlisting into the service of the United States" which the town intended to pay for. Nor did the town mean to offer a bounty to the first six to *commence* enlistments which should be perfected sometime. The unmistakable intention of the vote was to promise a bounty to the first six who should actually so enter the service as to pass to the credit of the town. The plaintiff was, in this sense, one of the " first six men to enlist into the service of the United States."

The next question is whether the words in the vote, " *to save the draft*," have any limiting force. The defendants say that, whether or not the plaintiff was one of the first six to enlist, he did not enlist " to save the draft," because there was no impend-

ing draft to be saved from. There had been an order for a draft, but that order was revoked November 6, 1863. This is very true, but it is to be noticed that " the draft" was just as much a reality in January, when the plaintiff enlisted, as in December before, when the town voted. It was in the previous November, that the order for a draft was revoked. If the town erroneously supposed that the draft was still pending, and decided it neces- sary to raise six men to save them from it, they can not escape paying the men, upon the ground that it turned out to be unneces- sary. It is not to be supposed that others understood their situa- tion and necessities better than they did themselves. It was for the town to say how many men they would procure by bounties, and they decided upon six. It is not certain or material, whether the object of the town was to provide against a draft by them re- garded as then impending, or to provide against *the future draft* of which all parties had a healthy apprehension throughout the war. One enlistment to the credit of the town would be just as much calculated " to save the draft" as another, so far as this town was concerned. It makes no difference, whether the object of the plaintiff's enlistment or the defendants' vote was to save the draft, or only to suppress the rebellion. In the one case the enlistment, the service and the credit would be the same as in the other. The words " *to save the draft*" in the vote, do not limit or add to the force of a vote passed when no draft was impending. They might be omitted, or the words *to suppress the rebellion* might be sub- stituted for them, and the force of the vote would be the same.

Holding, as we do, that the plaintiff was, in the sense of the vote, one of the first six men who enlisted into the service of the United States to save the draft, it follows that the plaintiff is entitled to recover, no fault being chargeable upon him by which the town were misled. It does not positively appear that he notified the town of his enlistment. Concede that he did not. It was the official duty of the officers of the regiment, promptly to notify the adjutant general of the state, and the case shows that the town authorities understood that, by corresponding with the adjutant general, they could find their standing. There is no evidence that the town authorities made any effort to ascertain the facts before

mustering in the men enlisted by them. Sargent's testimony "that during the year 1864 the selectmen were in the habit of fre-- quently writing the adjutant general to find out how their credits. stood," was not enough to raise a question for the jury as to its being impossible for the town, upon reasonable inquiry, to ascertain the facts in this case. Their *habit* during the *year*, if it was not even of sufficient uniformity to enable *them* to state how they acted in this case, was certainly too little to justify the jury in drawing the inference. The offer of the town was not limited to men at home or to men procured by the selectmen. They under- stood that they had men in the Gulf department as likely as any to be of the " first six" to enlist to save a draft. They were not justified in fairness in deciding that other men were " the first six," and so entitled to these bounties, until the men from the Gulf could be heard from ; and when these men show that they were first, it is for the town to show that, through some fault of the plaintiff's, they failed on reasonable effort to learn of it until too late. They offer no evidence to show either the reasonable effort on the part of the town, or the fault on the part of the plaintiff.

It is urged that the court should have left it to the jury to say whether the plaintiff enlisted in expectation of a bounty from the town. We are not prepared to say that the plaintiff, to avail himself of a general and public offer of a reward or bounty to the first six to do a particular act, is bound to prove that he became one of the six in reliance upon the offer. Probably he is not. bound to show anything beyond the fact that he has done all that, the offer itself stipulates as the condition of the reward. How-- ever this may be, all the evidence in this case tended to prove that the plaintiff did enlist in expectation of a reward from the town,, to the amount of three hundred dollars. In no view would it be- necessary, that he should be aware of the language of the vote: promising the bounty, or even of the existence of the vote upon which it ultimately proves that he is entitled to receive what he expected.

The conversation about the transfer of the plaintiff's credit to some other town, was after the plaintiff's right of action had be-- come perfected. None of the evidence tended to show that it,

amounted to a release of that right. Upon the whole, we are unable to discover any question for a jury in this case, and think that, upon the undisputed facts, the plaintiff was entitled to a recovery.

The judgment of the county court is affirmed.