# COUNTY OF ADDISON,

##### AT THE

## JANUARY TERM, 1870.

PRESENT :

Hon. JAMES BARRETT,
Hon. ASAHEL PECK,
Hon. WILLIAM C. WILSON, } Assistant Judges.
Hon. HOYT H. WHEELER,

---

## George L. Jackman *v.* Town of New Haven.

*Soldier's Bounty.    Towns.    Selectmen.    Adjutant General.*

A vote of a town, to pay a specified bounty to each one who should enlist on the town quota under a given call, constitutes a general and direct offer to any one who performs the conditions of the vote, and no contract with, or action on the part of the selectmen, either as recruiting officers or agents of the town, is necessary to give validity to such offer, or constitute an acceptance thereof.

The conditions of such vote are not performed until the soldier is mustered in, therefore priority in signing enlistment contracts would not be the test of right to the bounty as between the recruits, but priority of muster-in must determine to whom the bounty shall be paid.

Where a soldier re-enlisted in the field and was mustered in before the quota of the town to which he gave his credit was full, and was guilty of no neglect on his part in giving notice to the town, neither the subsequent neglect of the federal authorities to seasonably report to the adjutant general of the state his re-enlistment, nor the adjutant general's action in the mode of keeping or making his records of such contracts, nor his neglect to keep any record or make any entry at all of such matters, could affect the soldier's right to the bounty offered in the vote.

Jackman v. New Haven.

The circular, dated January 8, 1864, and issued from the adjutant general's office, was the announcement of a pre-existing and then present right, viz: in effect that re-enlisted veterans applied on the quota of the towns to which they gave their credit under the existing call, from the time of their enlistment and muster-in, provided they were mustered in before the quota was filled.

The plaintiff, a soldier then in the service, being informed of the vote of the defendant town to pay a bounty to each one who should enlist and apply on the quota of the town under the call of October 17, 1863, re-enlisted on the 15th of December, 1863, and was mustered in on the 24th day of the same month to the credit of said town. Before his re-enlistment the selectmen had procured a sufficient number to sign enlistment contracts at home to fill the quota, but they were not all mustered in until after the plaintiff's muster-in. The selectmen received notice from the plaintiff of his re-enlistment on the 20th of December, but did not get official notice of his muster-in until the latter part of January, nor until after those enlisted at home had been mustered in and paid the bounty under the vote of the town. The selectmen were not aware until the first of February that re-enlisted men would be allowed to count on the call of October 17th, but supposed they would not. Held that the plaintiff was entitled to recover the bounty specified in the vote. BARRETT, J., did not concur.

ASSUMPSIT to recover a town bounty of four hundred dollars. Plea, the general issue. Trial by jury, —— term, 1869, PIERPOINT, C. J., presiding.

The facts are fully stated in the opinion of the court, except in respect to the knowledge of the selectmen as to re-enlisted men being applied on the quota under the call of October 17, 1863. In respect to this the defendants gave evidence to show that up to the time of filling the quota as specified, and until about the first of February following, none of the authorities of the town were aware that re-enlisted men would be allowed to count on the call of October 17, 1863, but supposed they would not. That such was the opinion of the superintendent of recruiting for that district, and the general understanding on that subject; and that no authority was given for allowing re-enlisted men so to count, until a circular issued from the adjutant general's office, bearing date January 8, 1864, and received in New Haven about February 1st, 1864, a copy of which was introduced by the defendants. And that no official notice of the re-enlistment of the plaintiff, nor any notice of the date of his muster-in, was received by the town till some time between the 22d of January and 1st of February, 1864.

The counsel for the defendants claimed and requested the court to charge that the plaintiff was not entitled to recover, but this the court refused, to which the defendants excepted, and the case

was argued to the jury on the question of the plaintiff's knowledge of the offer and vote of the town prior to his re-enlistment, and on no other, and that question was submitted to the jury with a charge to which no exception was taken. The jury returned a verdict for the plaintiff for $400, and interest.

*John W. Stewart*, and *E. J. Phelps*, for the defendants.

*G. H. Scott*, and *E. R. Hard*, for the plaintiff.

The opinion of the court was delivered by

WILSON, J. The quota of the town of New Haven, under the call of October 17, 1863, was seventeen men. The town, at the meeting of December 12, 1863, regularly voted "that a bounty of $400 be paid to each one who might enlist to serve as a soldier in the army of the United States to fill the balance of the quota of this town under the (said) present call for volunteers." At the time of said vote, no part of said quota had been filled. The defendants, by their selectmen, after said 12th day of December, and before the 14th day of that month, enlisted a sufficient number of men to fill said quota, and intended to have them mustered into the service to the credit of the town on said quota. On the 15th day of said December the plaintiff, then serving with his regiment at Brandy Station, Virginia, was informed that the defendant town was paying $400 bounty for men under said call, and the plaintiff on that day, relying on the information as before stated, and expecting to receive a bounty of $400, re-enlisted and caused himself to be placed to the credit of said town. He caused notice to be given by one Sneden, to one of the selectmen of New Haven, on the 20th of said December, of said re-enlistment, and that he expected the bounty, to which notice the selectman replied that the plaintiff came too late as he thought their quota was full. No officer or agent of the town had any knowledge or notice that there was such a man as the plaintiff, or that he or any other man in the "field" had enlisted or proposed to enlist to their credit, until the notice was given by Sneden on the 20th of that month, as above stated. The plaintiff was, on the 24th day of December,

1863, mustered into the service to the credit of said town, but the muster was dated back to the 16th. On or before the 5th day of January, 1864, all the men so enlisted by the defendants were conveyed to Brattleboro, to the United States rendezvous, and placed under the charge of the United States authorities, and were all mustered into the service. The actual date of the muster-in of each is as follows, viz.: two of them December 14; two December 18; one December 22, and three December 29, 1863; two January 6, and the other seven January 22, 1864. It appears that only five of the seventeen men, enlisted by the procurement of the defendant town, were actually mustered into the service before the plaintiff's muster-in. Besides the plaintiff there were nine other men who re-enlisted in the field, to the credit of said town; seven of them were mustered into the service December 16, and the other two December 22, 1863, from all which it appears that of the seventeen men necessary to fill that quota, only fourteen of them were mustered into the service before the plaintiff's muster in. Upon the uncontradicted evidence in the case, we think the plaintiff is entitled to recover.

There was a contract with any one who performed the conditions of the vote. The vote constitutes a general and direct offer from the town to pay a bounty of $400 to each one who should enlist to serve as a soldier in the army of the United States, to fill the balance of the town's quota under that call. 24 E. C. L, 127; *Gale* v. *Jamaica*, 39 Vt., 610; *Steinberg* v. *Eden*, 41 Vt., 187; *Hill* v. *Eden*, 41 Vt., 195. To accept this offer of the town no contract with or assent of the selectmen was necessary. The plaintiff could bring himself within the provisions of the town vote by re-enlisting and applying his name upon the balance of the town's quota under that call, and being mustered in, while the offer remained open as between him and the defendants. The vote was as much a general and direct offer from the town to the plaintiff, who enlisted in the field without the knowledge of the selectmen, as it was to those enlisted by them. It appears that twenty-seven men undertook to accept the offer of the town, and they all went so far towards bringing themselves within the terms of the vote as to enlist to the defendants' credit before their quota,

under that call, was filled, the plaintiff being the eighteenth man who enlisted while the quota remained open. But neither of them could apply upon any quota until he had been accepted by the government and duly mustered into the United States' service. While the plaintiff was engaged in actual service, he re-enlisted, and placed his name to the credit of the defendants, upon that quota. He continued in said service, and was in actual service before and at the time of his muster-in upon his re-enlistment contract. The government allowed the plaintiff to re-enlist, and became a party to his re-enlistment contract, by which the government accepted the plaintiff as a suitable person to perform the service which the contract called for, and from that time he was a soldier in the army of the United States, and nothing ( except his muster-in ) remained to be done after his re-enlistment to entitle him to apply upon the quota of the defendant town. The plaintiff's muster-in, on the 24th of December, as of the 16th of that month, if antedated by authority, would show that the government understood the plaintiff should have been mustered on the 16th, and that the delay of his muster till the 24th, was not in consequence of any fault of the plaintiff. We have no occasion to decide whether the plaintiff had, by his re-enlistment and continuance in the service, before his muster-in, so far perfected his re-enlistment contract as to entitle him to have his muster-in, if it took place within a reasonable time after his re-enlistment, relate back to the date of his re-enlistment, or to the 16th of that month, as between the plaintiff and the defendant town, in respect to the general offer of the latter, so that the plaintiff would be entitled to recover the bounty, even if the recruits furnished by the selectmen had been mustered in before the muster-in of the plaintiff. At the time the plaintiff re-enlisted, only two of the seventeen men previously enlisted by the procurement of the selectmen had perfected their enlistment contracts. The other fifteen men were not in the service at the time they enlisted. They had not been accepted by the government, and could claim no right, under the vote, as against the plaintiff, by reason of the priority of their enlistment. The fact that the selectmen had previously enlisted a sufficient number of men to fill the quota,

but whose enlistment contracts had not been perfected, can not prejudice the plaintiff. The selectmen were, at that time, recruiting officers in their respective towns, and it was their duty to aid in procuring enlistments, but no action on the part of the defendants' selectmen, either as recruiting officers or as agents of the town, was necessary to give validity to such general and direct offer from the town of a bounty. It is plain, from the language of the vote, that the town did not intend to restrict payment of a bounty to such only as should, by the procurement or assent of the selectmen, enlist and be mustered in this state, but did intend to pay a bounty to each man who should comply with the terms of the vote, whether his enlistment contract should be perfected in this state or in the "field," with or without the knowledge of the defendants, if perfected before the quota was filled. The plaintiff was the fifteenth man mustered in to the defendants' credit, to apply upon that quota, and his muster-in was while the offer and quota remained open. This brought the plaintiff strictly within the terms of the vote, and thereby it became the duty of the government to apply him upon that quota, unless he was guilty of some neglect, or there existed some legal objection by reason of which such application could not be made. In *Gale* v. *Jamaica* this court decided that if, under such general offer, notice from the soldier to the town of his enlistment was necessary, all that could be claimed is that reasonable notice should have been given ; and what would constitute reasonable notice must depend upon the place where the plaintiff was at the time of his enlistment, the situation and business he was in, the fact that he was in the enemy's country, and engaged in actual service. This plaintiff gave to the defendants reasonable notice of his enlistment to their credit. And after he was accepted by the government, and mustered into the service, it then became the duty of the officers of the general government, who were authorized to re-enlist and muster in such veteran soldiers, to forward, or cause to be forwarded, to the adjutant general of this state the enlistment contract and muster roll of the plaintiff, which show the date of his enlistment, the date of his muster, the town to whose credit he was mustered into the service, and by the aid of which the

quota could be determined upon which the plaintiff had, in respect to the bounty, the right to be applied.

The war department of the general government kept their own accounts of re-enlistment contracts and muster-in rolls of veterans in the "field," so that they could, with the accounts of enlistments furnished by the respective towns through the adjutant general of the state, determine whether there was any deficiency on the 5th day of January, 1864, to be filled by draft. The general government had no direct communication with the towns as to the standing of their quotas, but gave notice to the adjutant general from time to time of such re-enlistment contracts as had been perfected, and it was his duty to notify the towns of such re-enlistments to their credit. At what time the plaintiff's enlistment was officially reported to the adjutant general, or whether there was any unreasonable delay in making such report, does not appear, but it does appear that the town had no notice until after the 22d of January, 1864, that the plaintiff had been mustered into the service to the defendants' credit. There is no evidence in the case tending to show that any delay of the general government to give official notice to the adjutant general of the plaintiff's enlistment and muster, or any delay of the adjutant general to give notice thereof to the town, was in consequence of any act, neglect or fault of the plaintiff. The time, therefore, that the adjutant general received notice of the plaintiff's re-enlistment and muster-in to the credit of the defendant town, or gave notice thereof to the town, or the time he actually entered the credit on his book, or whether he entered it in the order of time in which the enlistment contracts were perfected, or in the order in which he received notice of the credits, or entered it at all, is wholly immaterial under the circumstances of the case. The muster-in rolls upon re-enlistment contracts are the original and best evidence that such contracts have been perfected. And neither the subsequent neglect of the federal authorities to seasonably report to the adjutant general such re-enlistment contracts, nor his action in the mode of keeping or making his records of such contracts, nor his neglect to keep any record, or to make any entry at all of such matters, could deprive the plaintiff of any right or claim

which he could establish by the muster-in roll upon his re-enlistment contract. Nor is it material under the circumstances whether the defendants had an opportunity to dispose of the men who enlisted to the credit of the town in excess of its quota under that call. The defendants knew or might have known that soldiers in the field could re-enlist to the credit of the town, and had reason to suppose they would re-enlist in faith of the general offer the town had made, and that the number of enlistments to their credit might exceed the quota to fill which the bounty was offered. The defendants alone, by such general offer of a bounty, took whatever risk or loss might result from enlistments and the muster-in of soldiers to the credit of the town, in excess of that quota, where the men were, in good faith, enlisted and mustered in before the quota was filled, and such excess is not the consequence of their culpable neglect.

It is insisted by the defendants that up to the 8th of January, 1864, the regulations of the war department did not admit of an application of a man re-enlisted in the field to fill the quota of the town under that call, and it is claimed by the defendants that until that time the plaintiff would not have been credited on that quota if the town had offered him. This is incorrect. The order of the war department, allowing veterans in service to re-enlist, did not deny them the right to apply on the quota of the town to whose credit such veterans should re-enlist; and from the time of making and issuing that order it was understood and acted upon by some towns in this state, that such re-enlisted veterans would be credited to the towns to which the enlistment and muster-in rolls show them as belonging, and apply on the quota under the then present call. It is undoubtedly true that prior to January 8, 1864, the selectmen of some towns, and perhaps some of the superintendents of recruiting, entertained and expressed doubts as to whether such re-enlisted soldiers could be applied to fill the quota of the town under that call; and to correct that erroneous impression, the circular, under date of January 8th, was issued, by which a pre-existing and present right was announced. The adjutant general in that circular says: "That veterans who re-enlist in the field will be credited to towns to which the re-enlist-

ment contracts and muster-in rolls show that they belong. These credits will be given when the muster-in rolls upon such re-enlistment are received at this office, and can not be given until such rolls are received. The credit when given will apply upon the quota of the towns under the last call of the President for 300,000 volunteers."

The quota, to fill which the defendants offered said bounty, was assigned to them under the call mentioned in said circular. It is clear that the plaintiff should have been applied on that quota, as of the time his re-enlistment contract was perfected. Any other rule upon this subject would make his right to the bounty depend upon the subsequent action or neglect of persons over whom he had no control. The plaintiff having complied with the terms of the vote, therefore, upon the question of his right to the bounty, the law will treat him as applied on that quota of the town the same as if the application had been made in fact at the time he was mustered into the service. The jury found that the plaintiff had knowledge of the vote and offer of the town prior to his re-enlistment. We have therefore no occasion to consider whether such knowledge was material or not. In *Hill* v. *Eden*, the court say that, " in no view would it be necessary that he should be aware of the language of the vote promising the bounty, or even of the existence of the vote upon which it ultimately proves that he is entitled to receive what he expected." In *Davis* v. *Landgrove*, recently decided in Bennington county, where such general offer of a bounty had been made by that town, it appeared that the plaintiff was informed at the time he re-enlisted that towns in Vermont were moving in the matter of raising town bounties, but he was not influenced by this, but would have re-enlisted had he not been so informed. It did not appear in that case that the plaintiff had any information as to whether the town of Landgrove had offered, or was intending to offer, a town bounty. He was mustered into the service and applied on the quota to fill which the bounty was offered, and the court decided that he had brought himself within the terms of the vote, and was entitled to recover notwithstanding he had, at the time of his re-enlistment and muster-in, no information that the defendant town had offered a bounty.

Among the cases relied on by the defense are *Seymour* v. *Marl-boro*, 40 Vt., 171, and *Pettingill* v. *Enosburgh*, decided in Orleans county, August term, 1867, not reported. The facts, on which these decisions rest, are essentially different from those in this case. In the case of *Seymour* v. *Marlboro*, the plaintiff claimed 1st, that he was entitled to recover under the vote of December 6th, 1863, which offered a bounty of $300 ; but if not entitled to recover under that vote, he claimed under the vote of the town March 7th, 1865, which directed a bounty of $300 to be paid to him at the expiration of his term of service. Upon the case as made up with reference to the plaintiff's claim under the vote of December 6, it would seem that the main question in controversy, on the trial in the court below, was whether the plaintiff applied on the quota of the defendant town under the call of October 17, 1863, or not. The plaintiff in that suit re-enlisted December 16, 1863, and before the 1st day of January, 1864, he was mustered in to the service to the credit of said Marlboro to apply on said quota, of all of which the selectmen of Marlboro, on the first day of January, 1864, had due notice ; at which time that town had not filled its quota with other men. On the 4th day of January, 1864, while the quota remained open, unless it was filled by the plain-tiff, the plaintiff and defendants were told by the adjutant general that the plaintiff could not apply on said quota, and the case states that the selectmen then proceeded and filled the quota with other men. From the case, as stated in the exceptions, we may infer that at least seventeen men, including said Seymour, enlisted and were mustered in to the credit of Marlboro to apply on said quota, which was sixteen men, consequently one of them stood as a sur-plus man to the credit of the town. By the finding of the court below, that Seymour did not apply on said quota, they must have treated him as the surplus man or one of the surplus men standing to the credit of the town, notwithstanding he re-enlisted and was mustered to the credit of the town on said quota before it was filled. But the grounds of that finding are not apparent. It ap-pears that the adjutant general erroneously informed those parties that the plaintiff could not apply on that quota ; but the case states no fact or reason why such application could not have been

legally made. The case states that the plaintiff did not apply on the quota under the call of October 17, 1863 ; but the facts on which that finding is based are not stated, consequently this court on the hearing of that case could' not say as matter of law that he should have been applied on that quota, or treat him as applied there, on the question of his right to the bounty. In that case PROUT, J., says: " The plaintiff on re-enlisting having been credited to the town, it is not apparent to us why he could not have been thus counted or applied." That is, counted or applied on the quota under the call of October 17, 1863. He further says : " The plaintiff not having been applied on that quota without fault, on the part of the agents of the town, we think he is not entitled to recover by virtue of that vote." I think it is plain that the last above quoted remarks of PROUT, J., refer to and are based exclusively upon the finding of the court below, that Seymour did not apply on the quota under the call in October, 1863, and are not based upon the grounds of that finding, for they were not before the supreme court. That case does not decide that the mere neglect of government to apply a soldier on the quota to fill which he enlisted and was mustered to the credit of a town upon the offer of a bounty, or his application on another quota, or the neglect of the government to apply him on any quota, would in any way affect his right to recover the bounty, if his right to recover was in other respects established.

The case of *Pettingill* v. *Enosburgh* was tried on an agreed statement of facts; from which it appeared that the town offered a bounty of $300 to each of twenty-three men to fill the quota of that town under the call of October 17, 1863. The plaintiff re-enlisted in the field on the 16th of December, 1863, with the expectation of receiving a town bounty. The town had no knowledge until the 17th of January, 1864, of his re-enlistment, when they received notice thereof through the adjutant general, but before that time the town had filled said quota with other men to whom the bounty was paid. It was agreed in that case that the plaintiff did not apply on the quota of the town under the call of October 17, 1863, for raising which the bounty was offered, but d..d apply

on the quota of that town assigned under the call in March, 1864, for raising which no bounty was offered by the town. The case does not state that the plaintiff re-enlisted to the credit of that town on the quota under the call of October 17, 1863 ; it does not state that he placed his name to the credit of that town, or that he was mustered in to the credit of that town in season to have been applied on that quota, and the case does not state whether the plaintiff made any effort to give more seasonable notice to the town of his re-enlistment. I do not deem it necessary to review the other cases cited by the defendants' counsel. It will be seen on examination of the former decisions in this state, that the views expressed in this case are not opposed by the doctrine of any case decided by our court. And it would seem that no argument could be required to convince every one of the reasonableness and justice of the principles recognized and applied to the facts of this case.

The judgment of the county court is affirmed.

BARRETT, J., did not concur.