Bucklin *v.* Sudbury.

* NATHANIEL A. BUCKLIN *v.* THE TOWN OF SUDBURY.

*Soldier's · Bounty. Adjutant General. Quotas of Towns.
Muster Rolls. Acceptance of Men on Quota.*

The defendant town on the 8th of December, 1863, by vote, offered a bounty of $500 to each of such persons "as shall enlist before the 5th day of January, 1864, and be accepted on the quota of this town, under the recent proclamation of the President for 300,-000 men." The quota was 8 men. The plaintiff was mustered in, in the field, December 16, 1863. Eight men enlisted at home between December 3d and 23d, inclusive, and five of them were mustered in after December 16th, and prior to January 5th, and were reckoned at the state adjutant general's office as filling said quota. The muster roll of the plaintiff was not received at said office till after the other credits had there been entered as filling the quota. The plaintiff was applied by the adjutant general of the state to the credit of the town upon a subsequent *quota.* *Held* that the plaintiff was not entitled to the bounty offered by the vote.

Town quotas were unknown to the laws of congress, as well as to the President in making his calls for men, and to the war department at Washington, in apportioning among the states the whole number of men called for. The quotas of states alone were there regarded.

The distribution of quotas to towns for the purposes of the proposed drafts, and the providing for avoiding such drafts by the enlistment of volunteers by towns, was altogether a matter of state regulation. The towns, in voting bounties for men to fill their quotas, have neither known nor regarded any thing as constituting or showing their quotas, or standing in reference to such quotas, except the official action, records and documents of the state adjutant general's office : therefore *held,* that in the resolution offering the bounty in question, the town had reference to its duty and liability in regard to such quota as fixed and shown by such official action, records and documents.

Whether a town had discharged its duty in furnishing men for the military service of the United States, depended upon whether it had done what was required and prescribed under the laws of this state conformably to the rules, regulations, circulars and orders of the adjutant general of the state.

The defendant town furnished the number of men assigned by the adjutant general as its quota conformably to his regulations and orders, and they were accepted, reckoned and applied by him as filling said quota. The plaintiff was mustered in to the credit of the defendant town several days prior to five of said men, and caused notice thereof immediately to be sent by mail to said town, which notice was received by one of the selectmen prior to the muster-in of the last man applied on the quota, but the muster roll of the plaintiff was not received at the adjutant general's office until after the receipt at said office of the muster rolls of all said men. *Held,* that the plaintiff was not accepted by the adjutant general on the quota, and therefore was not entitled to a bounty.

The assignment of a mustered man by way of credit so as to count to the town and be accepted on a particular quota, is altogether a matter to be regulated and carried into effect through the instrumentality of the state military department.

* This case was argued at the January term, 1871, of the Rutland county supreme court, and re-argued at the general term in November, at Montpelier, and would regularly appear with the other cases of that term in the next volume of Reports, but was kindly furnished at the request of the Reporter for insertion in this volume.--REPORTER.

GENERAL AND SPECIAL ASSUMPSIT to recover a town bounty. Plea, the general issue, and trial by jury at the March term, 1870, of the Rutland county court, WHEELER, J., presiding.

The plaintiff put in evidence a certified copy of the record of the proceedings of a meeting of the defendant town, held on the 8th day of December, 1863, by which it appeared that under a proper article in the warning the town at said meeting passed the following resolution :

*Resolved*, by the town of Sudbury, in town meeting legally warned and holden on the 8th day of December, 1863, that a bounty of five hundred dollars be paid to each of such persons as shall enlist before the 5th day of January, 1864, and be accepted on the quota of this town, under the recent proclamation of the President for three hundred thousand men.

The plaintiff also introduced in evidence a copy of general order No. 2, of the adjutant and inspector general of the state, dated November 2d, 1863, by which it appeared that the quota of the defendant town, under the call of the President of October 17, 1863, for 300,000 men, was eight men ; and also the following certificate of James S. Peck, assistant adjutant and inspector general of this state :

SUDBURY.

|  | DATE OF MUSTER. | | |
|---|---|---|---|
| Chase, Augustus P. | December | 16, | 1863. |
| Grover, Luther. | " | 17, | " |
| Morgan, Julius L. | " | " | " |
| Ward, Charles C. | January | 4, | 1864. |
| Hunt, Moses C. | December | 16, | 1863. |
| Mahew, Frank. | " | 18, | " |
| Smith, Daniel W. | " | 16, | " |
| Thompson, Erasmus D. | " | 19, | " |
| McArthur, Clarence. | January | 5, | 1864. |
| Bucklin, Nathaniel L. | Dec. 16, 1863. | Re-enlisted. | |
| Coal, Charles V. | " " | " | " |
| Shaw, Charles M. | " " | " | " |
| Larabee, Jonathan W. | " " | " | " |
| Lillie, James F. | " " | " | " |

STATE OF VERMONT,    }
    Adjutant General's Office. }
    I hereby certify that the dates set opposite the above names are the dates of muster-in of each man who enlisted to the credit of the town of Sudbury, and the foregoing is a true list of the men

who enlisted from Oct. 17, 1863, to Feb. 27, 1864, as appears by the files and records of this office. JAMES S. PECK, *Ass't Adjt. & Insp. Gen.*

*N. A. Bucklin,* the plaintiff, testified that on the 16th day of December, 1863, the day of his re-enlistment to the credit of the defendant town, he was in the United States military service in company H, 5th regiment, Vermont volunteers ; that prior to his re-enlistment he was informed by letter from his father that Sudbury was paying $500 bounty, and that he enlisted in expectation of receiving the same bounty ; that on the 18th day of December, 1863, he procured Capt. Robinson to notify the selectmen, by mail, of his re-enlistment and claim for bounty ; that he was at home January 1, 1864, and saw one of the selectmen of Sudbury, and demanded the bounty due him, but was informed by said selectman that the quota was full.

William B. Robinson testified that he was captain of company H, 5th regiment, Vermont volunteers, in 1863 ; and at the request of the plaintiff he wrote and mailed the following letter, having enclosed therein the paper signed by plaintiff and others, making their claim upon the defendant town for a bounty. The letter was written on the 18th day of December, 1863, the day it bears date, and, with said paper enclosed, was directed to the first selectman of Sudbury, and mailed the same day, and that it took three days for letters to go from camp, near Brandy Station, Va., where they then were, to Sudbury.

LETTER AND PAPER ENCLOSED THEREIN.

CAMP 5TH VERMONT VOLUNTEERS,
Near Brandy Station, Va., Dec. 18, 1863.

*To First Selectman, Town of Sudbury, Vt. :*

SIR :—Herewith I transmit to you claim of some members of my company for the bounty offered for non-resident volunteers from the town of Sudbury.

I hope the claim of old and battle-scarred soldiers will receive all possible attention in the patriotic town of Sudbury.

I have the honor to remain,

Very respectfully your obedient servant,

WM. B. ROBINSON,
*Capt. Co. "H," 5th Vt. Vol.*

We, the undersigned, members of Co. H, 5th regiment Vermont volunteers, do hereby agree to, and do re-enlist as veteran volunteers for three years, or during the war, pursuant to general orders Nos. 191 and 376 from the war department, and we do hereby agree to enlist as part of the quota of the town of Sudbury, and do hereby file our claim for the bounty offered for non-resident volunteers from that town, provided the quota of the town be not already filled.　　　　　　　JAMES F. LILLIE,
CHARLES V. COAL,
NATHANIEL A. BUCKLIN,
C. M. SHAW.

I certify that the above named persons, members of Co. H, 5th Vt. Vols., have re-enlisted for three years, or the war, and as soon as a furlough can be obtained, by virtue of the general order No. 376 from the war department, they will proceed to Vermont and claim the bounty offered to non-resident volunteers from the town of Sudbury.　　　　　　　WM. B. ROBINSON,
*Capt. Co. H, 5th Vt. Vols.*

The defendant introduced the following documentary evidence :

SUDBURY.

|  |  | Date of Enlistment | Date of Muster-in. |
|---|---|---|---|
| 11th Regiment, | Chase, Augustus P.... | Dec.　3, 1863, | Dec. 16, 1863. |
| 2d　　" | Grover, Luther........ | "　8,　" | "　17,　" |
| "　　" | Morgan, Julius S....... | "　"　" | "　"　" |
| 5th　　" | Ward, Charles C...... | "　23,　" | Jan.　4, 1864. |
| 2d　Battery, | Hunt, Moses C........ | "　8,　" | Dec. 16, 1863. |
| "　　" | Mahew, Frank, Jr..... | "　"　" | "　18,　" |
| "　　" | Smith, Daniel W...... | "　"　" | "　16,　" |
| "　　" | Thompson, Eras. D.... | "　"　" | "　19,　" |

Adjutant and Inspector General's Office, ⎱
　　　Montpelier, 28th Feb., 1870.　　⎰
I hereby certify that the quota of the town of Sudbury, under the call of October 17th, 1863, was eight men, and that the foregoing appear by the files and records of this office to have been applied to the credit of said town under said call.
　　　　　　　　JAMES S. PECK,
　　　　　　　*Ass't Adj't & Ins. Gen.*

STATE OF VERMONT.

ADJUTANT AND INSPECTOR GENERAL'S OFFICE, ⎱
　　　Woodstock, January 8, 1864.　　⎰
The following official communication has been received :
" Recruits will be credited to the localities from which they receive local bounties, provided the muster-in rolls show them en-

listed and mustered in as of the said localities. The muster-in rolls must show the facts of the case, and will be the evidence for awarding the credits."

"Veterans in service, re-enlisting, will be credited to the localities to which the enlistment and muster-in rolls show them as belonging. Therefore, until veterans have been re-mustered, it cannot be determined to what particular locality they will be credited. (Signed,) JAMES B. FRY,
*Provost Marshal General.*"

The first clause of the above communication is in affirmance of the rule, which has been adopted and invariably acted upon in this state. All muster-in rolls must show, in the column headed "*Where Enrolled,*" the name of the town to which the man is to be credited, as shown by the statement of his residence in his enlistment contract. Previous to muster, alterations may be made, by the consent of the recruit, and of the selectmen of the town from which the change is to be made, and of the town to which the change is to be made. But after the muster has been completed and the muster-in rolls prepared and forwarded, no changes can be allowed.

Under the second clause of the above communication, veterans, who re-enlist in the field, will be credited to the towns to which the re-enlistment contracts and muster-in rolls show that they belong. These credits will be given when the muster-in rolls upon such re-enlistment are received at this office, and cannot be given until such rolls are received. No other evidence will supply the place of such rolls. The credit, when given, will apply upon the quota of the towns under the last call of the President for 300,-000 volunteers.

By order of the Governor.      PETER T. WASHBURN,
*Adjutant and Inspector-General.*

Adjutant and Inspector-General's Office, }
  Montpelier, Feb'y 28, 1870.    } [OFFICIAL.]
    JAMES S. PECK, *Ass't Adj't and Ins. Gen.*

### STATE OF VERMONT.

ADJUTANT AND INSPECTOR-GENERAL'S OFFICE, }
  Montpelier, 5th March, A. D. 1870.    }

LETTERS SENT.

"January 12, 1864.—Wrote adjutant general army, requesting muster-in roll of re-enlisted men."

"February 2, 1864.—Wrote Mattocks; muster-in rolls of veterans all right."

Adjutant and Inspector-General's Office, }
  Montpelier, March 5th, 1870. }

I hereby certify that the foregoing entries are true copies from the original "Letters Sent" Book, in this office.

JAMES S. PECK, *Ass't Adj't & Ins. Gen.*

OFFICE OF ASSISTANT COM'Y OF MUSTERS, }
  2d Division, 6th Army Corps, Jan. 30, 1864. }

GEN. P. T. WASHBURN, Adjutant and Inspector General, Vermont.

*Sir :*—I have just been shown a copy of your note to the adjutant general of the army of the Potomac, saying you had not yet received the muster-in rolls of the veteran volunteers of the 2d, 3d, 4th, 5th and 6th regiments.

I completed those rolls, and forwarded them to the Corps Com'y of Musters on January 9th. On the 12th, he ordered me to come and get them and forward them direct to their destination. I did so, and sent them to your address in the mail of the morning of January 13th. About a week afterwards I received a letter from your office acknowledging their receipt. The letter was written on your official paper, enclosed in your official envelope, and mailed at Woodstock. It was written as if by yourself, signature and all, and " pr ———" added. Very unfortunately the letter accidentally got among the waste papers and was destroyed. I have forgotten the clerk's name signed on it. The style of the writing—chirography—was very much like your own, but as if written with a finer pointed pen ; the letters a little larger, and each a little more distinct than your own.

I was greatly astonished to learn that you had not received them, and cannot account for it. The same mail that brought the letter of receipt from your office, brought me one from the adjutant of the state of Maine, acknowledging the receipt of his.

If they cannot be found, of course new ones must be made. Upon further intimation from you, that you have been unable to find them, I will set about making new ones as soon as the commanding officers of companies return, so that I can get their retained copy to make them from.

I am, Sir, very respectfully, your obedient servant,
  (Signed,)     E. MATTOCKS, Adj't 3d Vt.,
    *Asst. Com'y of Musters.*

Adjutant and Inspector General's Office, }
  Montpelier, 5th March, 1870. }

I hereby certify that the foregoing is a true copy of the original on file in this office.     JAMES S. PECK,
    *Ass't Adj't and Ins. Gen.*

Office of Assistant Com'y of Musters, }
    2d Div., 6th Corps, January 14, 1864. }

Gen. P. T. Washburn, Adjutant General, State of Vermont.

General: —I have the honor to transmit herewith, direct to you, by positive orders of the corps commissary of musters, who has had them in his possession for four days, the muster-in rolls, with residences of re-enlisted men of the 2d, 3d, 4th, 5th and 6th regiments of Vermont volunteer Infantry, as veteran volunteers.
                    I am, Sir, very respectfully,
                            Your obedient servant,
        (Signed,)            E. Mattocks, Adj't 3d Vt.,
                                Ass't Com'y of Musters,
                                    2d Div., 6th Corps.

Adjutant and Inspector General's Office, }
    Montpelier, 5th March, 1870.        }

I hereby certify that the foregoing is a true copy of the original on file in this office.            James S. Peck,
                                Ass't Adj't and Ins. Gen.

James S. Peck was sworn for the defense, and testified: I have had charge of the adjutant general's office for two years past. I am assistant adjutant general. The office first had authority to credit re-enlisted men in the field about January 8th, 1864. The practice of the office was to credit men when their muster rolls were received at the office. The records are corroborated by books made from the rolls. The musters-in at Brattleboro were received at our office of the eight men credited at our office; I can't state when. The muster rolls were sent January 12th, 1864, from Brandy Station. The 30th of January, 1864, Gen. Mattocks wrote Gen. Washburn concerning a mistake in their being forwarded. February 2d, Washburn wrote Mattocks, " all right." The muster rolls of the 5th were received from Brandy Station at the adjutant general's office between January 28th and February 2d. The quota of Sudbury had been filled before they were received. The men from the field were credited to the town of Sudbury, under the call of February, 1864. The first name sent to our office as mustered was the first recognized, irrespective of enlistment.

#### CROSS-EXAMINATION.

The adjutant general of Vermont made application for credits referred to in paper shown, (Peck's certificate stating what men filled the quota.) In the circular of January 8th, 1864, the order of Gen. Fry, therein contained, was issued very shortly before.

I have positive information from those in our office on this. In 1863 and 1864, Vermont had no assistant adjutant general. There were several clerks in the office during those years. In case it was necessary to make a draft, the provost marshal did it. As to the subject of quotas, Gen. Washburn assessed the number of men for each town, subject to the provost marshals. I know the provost marshals issued orders to the selectmen of the towns to raise men under the quotas. I understand the adjutant general and provost marshals worked together in raising men under the quotas. I know that Gen. Washburn, without authority of selectmen, changed men from credits of one town and applied them on another.

Benoni Griffin also testified: I was a selectman of Sudbury from March 1st, 1863, to 1864. I did most of the business of the office. After the town meeting on the 8th of December, I proceeded to enlist men. Six men were thus raised that day, and I succeeded in getting the remaining two the same evening, and filled the papers out for another, who would take the place of any one of the eight who might be rejected. The papers of the men were made December 8th—eight absolutely, and one to go if wanted. We sent them to the superintendent of recruiting, at Castleton, December 15th. We got notice that one of the men was rejected in two or three days. Soon after we forwarded another man. I went with the first eight. Mr. Horton took the ninth. The first intelligence we had from the field that any one had enlisted to the credit of our town, was last of December; this was after we sent our men to Brattleboro. We paid the eight men the bounties under the town vote. The first time I knew the re-enlisted men would be allowed to count on our quota was when we received the circular of the 8th of January, subsequent to its date.

### CROSS-EXAMINATION.

I received the letter of Captain Robinson from the post-office; it was directed to our first selectman, Mr. Hall; don't think he got the letter from the office; I got the letter some time after its date. I noticed that it had been a long time on the way, twice as long, or more, than usual. I am pretty positive I took it from the office; I usually took papers from the office directed to the first selectman. I think I received the letter after I sent the last man to Mr. Hyde, the last of December. The letter was longer than the usual time coming; I noticed the fact when I received it.

All the evidence was taken subject to all legal objections thereto. Neither party claimed that there was any question for

the jury, and the court directed a verdict for the plaintiff for the amount of the bounty claimed by him with interest.

Exceptions by the defendant.

*Briggs & Ormsbee* and *E. J. Phelps,* for the defendant.

By the language of the vote, the bounty was to be paid to such persons " as shall enlist before the 5th day of January, 1864, *and be accepted on the quota of this town, under the recent proclamation of the President for three hundred thousand men.*"

To entitle the plaintiff to the bounty therefore, by the terms of the contract, it is not enough that he should have tried to be accepted, or that (without any fault of the town) he ought to have been accepted. He must actually have been accepted on that quota.

The evidence clearly shows that the plaintiff never was accepted or applied upon the quota referred to in the vote ; but was in fact applied upon a subsequent and different quota, raised under a different call.

*J. Q. Hawkins* and *Dunton & Veazey,* for the plaintiff.

No one had been mustered in to the credit of Sudbury on this quota prior to December 16, 1863. On the 16th, eight men were mustered in, including the plaintiff. Four of these were mustered in at Brandy Station, Va., from one company, Co. H. 5th regiment Vermont volunteers, and of these four, the plaintiff was the first. His home was in Sudbury, and he re-enlisted with a knowledge of the bounty which Sudbury had voted to pay under the existing call, and with the expectation of receiving this town bounty. There was no lack of diligence on his part in giving notice to the town of his muster-in to the credit of Sudbury. These facts bring him clearly and fully within the rule established in all the cases from *Gale* v. *Jamaica,* 39 Vt., 610, to *Jackman* v. *New Haven,* 42 Vt., 591.

The testimony of Peck was hearsay, and should not be regarded, the same having been taken subject to objection.

Neither the neglect of the federal authorities to seasonably report to the adjutant general of the state the plaintiff's re-enlist-

ment, nor the adjutant general's action in the mode of keeping or making his records of enlistment contracts, nor his neglect to keep any record or make any entry at all of such matters, could affect the plaintiff's right to the bounty offered in the vote. Cases cited above.

The clause in the resolution, " and be accepted on the quota of this town," referred to acceptance by the general government. The town could neither accept nor reject. The soldier on muster-in was subjected to a physical examination by the examining board of the general government, which was the test of his fitness and acceptance.

Neither was there any power on the part of the state to accept or reject. The whole matter of enlistment, muster-in, acceptance and credit belonged to and was performed by the general government. See act for enrolling and calling out the national forces, and for other purposes, approved March 3d, 1863.

The opinion of the court was delivered by

BARRETT, J. In the variety of this class of cases, however far the court may seem to have gone in maintaining claims for bounty upon the very ground and point of the respective decisions, or however wide the range of remark by judges in discoursing upon the subject as involved in or suggested by the case then in hand, the idea has been expressly or impliedly maintained, that the party claiming a bounty is not entitled to recover, unless, in some way, it is established that he comes within the scope and meaning of the vote by which it is offered. Assuming, for the moment, that the learned judge who drew up the printed opinion in *Jackman* v. *New Haven*, 42 Vt., 591, in all the language of that opinion, embodied accurately only views in which he and his two associates concurred in deciding the case, that idea is distinctly expressed by him thus : " It is plain from the language of the vote that the town did not intend to restrict payment of a bounty to such only as should, by the procurement or assent of the selectmen, enlist and be mustered in this state, but did intend to pay bounty to each man who should comply with the terms of the vote, &c. * * * * This brought the plaintiff strictly within the terms of the vote,"

&c. Upon this idea that judgment was based. While I concurred in that idea, I failed to see that the plaintiff so brought himself within the vote as to render the town liable to him for the bounty. In the early and leading case of *Gale* v. *Jamaica*, 39 Vt., that idea is the comprehensive bottom ground of the decision. And, indeed, in this respect there is not an exceptional case in the books. The two leading points of debate in this line of bounty cases have been, whether the offer was an *open* one, so that a person coming within its terms was entitled under it, without anything further by way of bargain being necessary between the parties; and whether the party claiming came within the offer, whatever mig'it be its character.

In the present case the terms of the vote are specific, proffering a bounty " to each of such persons as shall enlist before the 5th day of January, 1864, and be accepted on the quota of this town under the recent proclamation of the President for 300,000 men." The plaintiff re-enlisted in the field, December 15, 1863, and was mustered in the next day to the credit of said town, but he was not reckoned in the adjutant general's office on that quota. Eight men enlisted at home between December 3d and 23d inclusive, and five of them were mustered in after December 16th and prior to January 5th, and they were reckoned at the adjutant general's office as filling said quota. The muster-in roll of the plaintiff was not forwarded by the officers in the field to the adjutant general's office till after the other credits had there been reckoned and entered as filling said quota. The plaintiff was reckoned to the credit of the town upon a subsequent quota.

The decisive question is, was the plaintiff *accepted* on the quota named in the vote, within the meaning of that vote?

*Town quotas* were unknown to the laws of Congress, as well as to the President in making his calls for men, and to the war department at Washington in apportioning among the loyal states the whole number of men called for. The quotas of states alone were there regarded; and only the duty of the state, or of the citizens of the state subject to military service, was sought to be ascertained and enforced. The distributing of quotas to towns for the purposes of the proposed drafts, and the providing for

avoiding such drafts by the enlistment of volunteers by towns, was altogether a matter of state regulation—was done under state laws and by state officers. Congress and the military department of the general government acceded to and adopted what was thus done within the state and by the state authorities, in view that it answered and operated in performance of what was required of the state under the call of the President. This fully appears by circular No. 1, Adjutant General's Report, 1864, p. 122, dated November 2, 1863, containing an order from Provost Marshal Gen. Fry to Gen. Pitcher, October 28, 1863. Following this, in said *circular* of the adjutant general, it is said, " that each town will be credited with all the men furnished by it towards the several quotas thus assigned," (by general order No. 2).

In *Gale* v. *Jamaica*, Ch. J. PIERPOINT has embodied a comprehensive and correct statement of the matter as follows : " Under this proclamation (for 300,000 men) the governor of this state, through the adjutant general, ascertained the number of men which each town was required to raise according to the number of men therein subject to military duty, to make up the proportion of the 300,000 which the state was called on to furnish, and issued general order No. 2, therein specifying the number which each town was to raise to fill their quota under said call, &c. * * * * * * The number assigned to Jamaica as their quota of the 300,000 was 28 men," &c. This understanding of the matter has been held and acted upon by all concerned, in every bounty case that has come into this court. In the case before us the plaintiff made up his case by proofs drawn from the office of the adjutant general, showing the quota of the town as there made out, and nowhere else, and the standing of the town with reference to that quota, upon which he claims that he was or should have been accepted under the vote, and so entitled to the bounty. Everything appertaining to the apportioning of quotas among the towns, and of fixing the number to be furnished by the defendant, as one of which the plaintiff claims to be counted, all rests in, and results from, the official action and records and documents of that office. The towns, in voting bounties for men to fill their quotas, have neither known nor had in mind anything, as constituting or

showing their quotas, or their standing in reference to such quotas, except such action, records and documents. So that it must be held in this case that, in the resolution offering the bounty in question, the town had reference to its duty and liability in regard to such quota, as fixed and shown by such official action, records and documents of the adjutant general's office. That office, under the laws of the state, and to answer the duty of the state, without having it enforced by a draft, prescribed rules and regulations, and issued official orders and circulars, in pursuance of which the respective towns might, under the same laws, answer the duties respectively charged upon them in that behalf. Whether a town had discharged such duty depended on whether it had done what was required and prescribed under said laws, conformably to said rules, regulations, circulars and orders. If it had so done, then it was no further chargeable to the state or nation in that behalf. And this matter was to be administered by that office, so far as the duty of the town was concerned in reference to the prescribed quotas. The defendant town furnished certain men, conformably to said rules, regulations, orders and circulars, to the number assigned by that office as its quota under the said call, and they were accepted, reckoned and applied by that office as filling said quota, and in fact filled it.

The question now is, was the plaintiff entitled to be accepted and counted on said quota under said vote ?

It is seen that the muster-in roll does not specify any *quota*, but only shows that the soldier is enlisted and mustered in to the credit of the town named. It is seen also that the order to Gen. Pitcher of October 28, 1863, above referred to, makes no rule, order or direction as to the particular quota on which a soldier mustered in is to be reckoned by way of credit,—but only that he may be credited to some particular locality. The same is true of the order of Provost Marshal Gen. Fry, promulgated by Adj't Gen. Washburn in circular No. 4, January 8, 1864 ; and in respect to that, it will be noticed that in order to entitle the credit to be made to a particular locality, " the muster-in rolls must show the facts, and will be the basis for awarding the credits." So that nothing that is required by or done under said last named

orders, applies the mustered man on any quota, or accepts him on any quota.

He is accepted into the service by being mustered in, and is rendered the subject of a credit to the town named; but the *awarding* of the credit is not attempted by the act of mustering in. The assignment of him by way of credit, so as to count to the town on a particular quota, his being accepted or allowed on such quota, is altogether a matter to be regulated and carried into effect through the instrumentality of the state military department, centered in, and consummating results by, the action of the adjutant general's office.

It is shown by the testimony of Gen. Peck, assistant adjutant general, that the credit of men to towns was made at that office on the muster-in rolls being received. The same thing is in substance shown by said circular No. 4, to have been true before, as well as after the date of said circular. And it may further be remarked that such must necessarily have been the case. For no credit was entitled to be given under any law, rule, order or usage of either the United States, or the state military department, until the soldier had been mustered in; and that act was done by some officer under the war department of the United States. The fact of such muster-in could not be authentically known at the office of our adjutant general, till officially communicated by the mustering-in department. So, of course the credit could not be given to any town nor be accounted on any particular quota, till the muster-in roll had been received at the office of the adjutant general, as " the basis of awarding the credit."

In the present case, the full number of the defendant's quota had been mustered in to the credit of the town, and upon due report of the fact to the adjutant general, that credit had been entered and applied upon that quota, before any certification of the plaintiff's muster-in was forwarded to or received at that office. Those eight men thus applied had been accepted and had filled the quota in full discharge of the duty of the town in respect thereto. Of course the adjutant general did not, as he could not, accept the plaintiff on that quota.

When the quota had been thus filled, the plaintiff had no ground

90

for claiming, as against the town under the vote in question, that he was entitled to be accepted on the quota. He is chargeable with a knowledge of the vote so far as it may be necessary in order to bring himself within it; and he was as much bound to know what was requisite in order to his being *accepted*, in the sense of the vote, as was the town; and, of course, in enlisting and being mustered in to the credit of the town, if he would have the bounty under the vote, he assumed the burden and hazard of being accepted on that quota in the only way in which he could be accepted, and that burden and hazard would continue till he should be thus accepted, or should be prevented from so doing by the fault of the town, or of parties for whose fault the town would be responsible. No such fault is imputed in this case.

The question is not before us, whether the plaintiff would be entitled to recover, if the muster-in roll of the plaintiff had been in fact received at the adjutant general's office before that of the men, or some of them, who were reckoned on that quota, and, by mistake or caprice in that office, the plaintiff had not been reckoned, when, according to the rules and usages of the office in that respect, he was entitled to be. So no opinion is intimated on such question.

What is thus held and said in the case before us does not seem to contravene the holding of the court upon the controlling and decisive questions in most of the cases that have been before us, bearing more or less analogy to this. In *Gale* v. *Jamaica*, *supra*, it appeared that notice of the plaintiff's muster-in had been sent to the adjutant general's office according to the regulations in that respect, and that he was in fact credited on the quota named in the vote some days before the quota was actually filled. That was regarded as the decisive fact, and the decision is entirely consonant with the one we now make. The residue of the case is as to how the parties should be affected, under the circumstances, by the fact that the town did not receive notice in fact of the plaintiff's application on the quota till after the selectmen had procured other men to fill the same quota.

In *Steinburg* v. *Eden*, 41 Vt., the selectmen were notified by the adjutant general, that the plaintiff had been credited to said

town, under the call named in the vote, six days before the muster-in of the two other men, one of whom the town claimed should be reckoned on the quota instead of the plaintiff. This was the point on which the decision rested ; and what we now hold is in accordance with what was decided in that case.

In *Johnson* v. *Newfane*, 40 Vt., it is stated that the plaintiff was mustered in and applied on the quota, and the town treated him as reckoned to its credit in filling the quota. Nothing is said as to the mode in which that application of credit was made, but, as it was in fact made, it is assumed that it was made at the office of the adjutant general, where alone it could be done in satisfaction of quotas. There was no controversy as to the right of the plaintiff, as against some other man, to be counted on that quota, for the town so counted him. Having applied on the quota, he had a judgment for the bounty ; which is in harmony with our decision in this case.

In *Seymour* v. *Marlboro*, 40 Vt., the plaintiff re-enlisted in the field, and was mustered in to the credit of the town, and, on the 1st day of January, 1864, he notified the selectmen that he had re-enlisted to apply on the required quota, and had been mustered in to their credit, and claimed the bounty. On the 4th of January General Pitcher inquired of the adjutant general, whether the plaintiff could be applied on said quota, and was informed that he could not, and this was communicated to the plaintiff and the selectmen. Thereupon the quota was filled with other men and the plaintiff was not applied on it. It was decided that he was not entitled to the bounty voted for such as should enlist to fill that quota. That decision is concurrent with this. That case is very instructive in several respects. Some of the facts in the statement are worthy of special attention, as showing that a credit to a town, made when the soldier was mustered in, did not apply him on any quota, even though the soldier designated the quota which he enlisted on ; also that the provost marshal had nothing to do with the applying of men on quotas ; and that it was a matter wholly with the state authorities, and was done by the adjutant general. It is further apparent that, on said 4th of January, the adjutant general understood that men re-enlisted in the field, as the plaintiff was, were not applicable un-

der the pending call of October 17, 1863. All of these facts seem to have had judicial recognition in the decision of that case; and one fact seems to have special prominence in that respect, as shown by a passage in the opinion, viz: "The plaintiff on' re-enlisting, having been credited to the town, it is not apparent to us why he could not have been thus counted or applied. He was not, and the town filled the quota with other men." This would seem to indicate a marked recognition of the exclusive jurisdiction of the adjutant general in the matter of applying credits in the filling of quotas. The briefs of the counsel in that case will be found serviceable by such as would fully appreciate the scope and force of that decision, and the terse, comprehensive and significant language of the printed opinion.

There is a class of cases in which the vote of bounty did not require the soldier to be accepted or applied on any quota, but only that he should enlist and be mustered in under some call, or to save a draft. There is another class that turned upon the fact that the soldier enlisted by the procurement of the selectmen by special contract. There are some cases standing respectively upon their own peculiar facts. The cases thus indicated are so distinguishable from the one under consideration, in the ground and point on which the decisions rested, as not to be the subjects of conflict between them and this.

Perhaps the case of *Jackman* v. *New Haven* should be excepted from this remark. However that may be, the decision of the present case is made upon the concurring opinion of five members of the court, with that case as reported open before them.

The judgment of the county court is reversed, and cause remanded.

PECK, J., would affirm the judgment.

WHEELER, J., having tried the case in the county court, did not hear it in this court.