Wm. F. Eddy, administrator of Camillus T. Warner, v. Town of Landgrove.

### Soldier's Bounty.

At a town meeting held December 1st, 1863, under a call as follows:
"2d. To see what course the town will take in regard to raising of soldiers, that the town is now called upon to furnish," and
"3d. To see what bounty the town will agree to pay as inducement for volunteers to enlist,"
The town voted "1st. To pass over the 2d article."
"2d. To raise $300 as a bounty or pay $20 per month for each man while in service."
"4th. To pay these men if raised the bounty of $300 each, when mustered into serveee, or $20 per month each during the term of service."
Held that the above votes when considered in connection with the call had reference to the men required to fill the quota of the town at the time they were passed.

Assumpsit for a town bounty. Plea, the general issue, and statute of limitation. Trial by the court, September term, 1871, Ross, J., presiding.

The court found the following facts: That the statute of limitations did not apply. Camillus T. Warner, plaintiff's intestate, enlisted October 21, 1861, to the credit of Landgrove, and always

remained in the service to the credit of Landgrove till the time of his death, June 11, 1864. December 1, 1863, Landgrove held a town meeting pursuant to a warning, which, with the votes are correctly stated in the *syllabus*. December 21, 1863, Warner re-enlisted in the field to the credit of Landgrove, and was mus. tered in December 25. The selectmen enlisted at home two recruits, one December 2, and one December 4. This was the first enlistment of the four men last named. They were mustered December 24. The quota of Landgrove under the call of October 17, 1863, was five men, and it had a surplus credit of one man over previous calls, and its quota under the call of February 1, 1864, was two men. Warner and the four men enlisted by the selectmen, and two more men who were mustered January 5, were all the men who enlisted to the credit of Landgrove between December 1 and February 1, and they all applied to its credit, either under the call of October 17, or subsequent calls. In 1865 there was a call under which Landgrove was required to furnish and did furnish one man in addition to those above named. The selectmen were notified of Warner's re-enlistment and muster to the credit of Landgrove, about the 20th of January, 1864. No bounty has ever been paid to said Warner or his administrator, but $100 has been paid to his widow since his decease, which the administrator offers to allow by way of offset if judgment shall finally be rendered for the plaintiff.

The printed report of the Adjutant General for 1864, pp. 464, 153, 154, and 158, and two certificates from that office, were introduced and are referred to for the purpose of showing orders and calls for men, and the application of men upon the quota of Landgrove, so far as it does not contradict the facts above set forth. The court found from the Adjutant and Inspector General's report, and from the certified copies from that office, which were the only evidence in regard to the quota of Landgrove under the call of October 17, 1863, and the manner in which it was filled, and the persons who applied on that quota of the defendant, that the plaintiff's intestate did not apply on the quota of the defendant under that call. The plaintiff claimed the law applied the plaintiff's intestate immediately upon his re-enlistment and

muster, and in that manner he went to fill the quota of the defendant under the call of October 17, 1863, and came within the terms of the vote of December 1, 1863. Upon these facts the court rendered judgment for the defendant, to which plaintiff excepted.

*Waterman & Reed* and *J. L. Martin*, for the plaintiff.

*A. Stoddard*, for the defendant.

The opinion of the court was delivered by

PIERPOINT, Ch. J. It appears from the exceptions that under the call for soldiers, issued October 17, 1863, the quota of the town of Landgrove was in fact four men. On the 4th of December, 1863, the selectmen had enlisted the four men necessary to fill the quota of said town. They were mustered in on the 24th of December, and were applied upon and filled the quota of the town under said call. The plaintiff's intestate, Warner, enlisted to the credit of said town on the 21st of December, 1863, and was mustered in on the 24th of December, and was not applied upon the quota under the call of 1863, but upon a subsequent one. Upon these facts the plaintiff's intestate does not come within any principle entitling him to recover, recognized in any decided case upon this subject from *Gale* v. *Jamaica*, 39 Vt., 610, to *Bucklin* v. *Sudbury*, 43 Vt., 700, which is the last reported case.

If the plaintiff in this case can recover, it must be by reason of the peculiar phraseology of the vote of the town, passed December 1, 1863. In construing this vote we must look at the warning under which the meeting was held that passed the vote. The 2d article in the warning was, " to see what course the town will take in regard to raising of soldiers that the town is now called upon to furnish." " 3d. To see what bounty the town will agree to pay as inducement for volunteers to enlist." These two articles in the warning manifestly relate to one and the same subject, that is, the means that the town will adopt to raise the men necessary to fill their then quota, whether by offering a bounty, and what bounty, or otherwise; and that there might be no uncertainty

about the warning, the selectmen inserted the 3d article, to give the inhabitants notice that the subject of paying bounties was one of the matters to be considered—all having reference to the number of men then required. When the inhabitants assembled in pursuance of such warning, they voted to pass over the 2d article, and proceeded to act under the 3d, thus indicating an intention to rely upon the offer of a bounty as the means by which to raise the required number of men. The town then voted to raise $300 as a bounty for each man while in the service. Then " voted to raise the money on the grand list." Then voted to. pay *these men*, if raised, the bounty of $300 each, when mustered into service.

We think these votes, when considered in connection with the warning, and the purpose for which the meeting was called, as manifested by the warning, must be regarded as having reference to the men that the town was then called upon to furnish, and not to any men, and any number of men, that might thereafter enlist to the credit of the town. Judgment affirmed.