GILBERT A. DAVIS, ADMINISTRATOR OF HENRY T. SEAVER, *v.*
THE TOWN OF WINDSOR.

*Vote of Town.    Soldier's Bounty.*

The warning of a town meeting was, "To see if the town will raise a sum of money to encourage enlistments in said town." The vote was, "That the sum of $300 be paid to each of such volunteers as may be enlisted and mustered into service under the call of the president for 300,000 men, October 17, 1863, provided the quota is not filled; and in case the quota is filled, then the further sum of $200, to the number of 29 men." *Held*, that enlistments were not thereby confined to those actually made within the territorial limits of the town.

The plaintiff's intestate re-enlisted in the field to the credit of the defendant, on December 16, 1863, and was mustered the same day; but his muster roll was not received at the adjutant general's office till between January 17 and 21, 1864. On and before the 25th of said December, the selectmen of the defendant had enlisted and caused to be mustered into service, the full number of said quota, and none of the officers of the town had any knowledge that any one had enlisted in the field to the credit of the town, until several weeks after said quota was filled, and the bounties paid. The intestate did not act upon the faith of said vote when he enlisted and was mustered, and had no knowledge of it. He was in fact one of the first twenty-two men who enlisted after the passage of said vote, and one of the first six who were mustered. *Held*, that he was not entitled to the bounty offered by said vote.

ASSUMPSIT for a town bounty, Plea, the general issue, and trial by the court, December term, 1873, Windsor county, BARRETT, J., presiding.

The plaintiff's intestate re-enlisted to the credit of the defendant, at Brandy Station, Va., on the 16th of December, 1863, and was mustered into service on the same day. The two Sturtevants named in the opinion, were enlisted by the selectmen of the town on the 1st of December, 1863, and mustered on the 25th of the same December, and credited upon the books of the adjutant general, to fill the quota of 29 men named in the opin-

ion. The intestate was the first man who stood to the credit of the town on the adjutant general's books, after said quota was filled; and was one of the first twenty-two men who enlisted to the credit of the town after the passage of the vote stated in the opinion, and one of the first six who were mustered thereafter. All the other facts sufficiently appear in the opinion. The court rendered judgment, *pro forma*, for the defendant; to which the plaintiff excepted.

The plaintiff, *pro se.*

*J. S. Marcy* and *W. C. French*, for the defendant.

The opinion of the court was delivered by

REDFIELD, J. The defendant town voted, November 30, 1863, " that the sum of $300 be paid to each of such volunteers as may be enlisted and mustered into service under the call of the president for 300,000 men, October 17, 1863, provided the quota is not filled; and in case the quota is filled, then the further sum of $200, to the number of 29 men." The exceptions state the number to be " 39 men," which, by the affidavit of the town clerk, seems to have been a clerical mistake in his certificate. But it is not important whether the number named in the vote is 29 or 39, as the vote must, by its terms, be confined to the number of soldiers required under that call of the president, and that number is conceded to be 29 men.

The warning states the business proposed, " to raise a sum of money to encourage enlistments in said town." It would be a very narrow and restricted construction, to confine enlistments to those actually made within the territorial limits of the town, and exclude all others. It was, we think, the purpose of the town to vote money to procure enlistments to fill the quota of the town, and comply with the duty resting upon said town. And the vote, without limitation, is the natural interpretation of the warning.

Treating the warning and the vote as the means of effectuating the purpose of the town to fill the quota under that call, of 29

men, from whatever source they could be procured, we come to the question whether the plaintiff's intestate was one of these men. It is conceded in this case that the muster-in roll of Seaver was received at the office of the adjutant and inspector general between the 17th and 21st January, 1864. And it appears that the two Sturtevants (who precede Seaver in the order of filling the quota on the books of the adjutant general) had their muster-in roll certified by Major Austine, at Brattleboro, on the 28th of the same month; and hence it is insisted that their muster roll could not have been in the adjutant general's office until after the 28th January, at the time it was certified by Major Austine. The selectmen of Windsor enlisted, and had mustered into the service under that call of the president, 29 men, to fill said quota, on or before the 25th December, 1863, and such soldiers are credited to said town on the books of the adjutant and inspector general, in their order, filling such quota without appropriating the plaintiff's intestate, or other veteran recruits in the field. There is nothing in the case to show, and it is not claimed in argument, that the officers of the town had any knowledge or intimation, that any one had enlisted in the field to the credit of Windsor, until several weeks after such officers had recruited and had mustered in, the full number required to fill the quota of said town, and taken means, so far as they could do, to have such enlistments applied on said quota; and had fully paid each of the 29 men his bounty of $500.

The town had fully discharged its duty under that call of the president; and the officers of the town had done all required by said vote. Besides this, the adjutant general had distinctly warned the town that enlistments of veterans in the field could not apply on such quota; and the town had no intimation otherwise, until the 8th January, 1864, long after the quota had been filled, and bounties paid. It is said in *Bucklin* v. *Sudbury*, 43 Vt. 700, that no opinion is expressed " whether the plaintiff would be entitled to recover, if the muster-in roll had been in fact received at the adjutant general's office before that of the men who were reckoned on that quota, and by mistake or caprice in that office, the plaintiff had not been reckoned." And

it is claimed by the plaintiff that such state of facts exists in this case.

The manner recruits were enlisted, and quotas filled, by the several towns, as a matter of current history, may not be without some proper bearing, in determining duties and liabilities imposed on the several towns. When a call for men was made by the president, the respective quotas were assigned in this state to the several towns. The towns received the apportionment of their quotas from the adjutant general, and knew no other source whence to ascertain the measure of their duties, and when they were discharged. The towns were instructed that no recruit in the field, could apply on their quotas. They were required to fill their quotas before the 5th January, to avoid a draft. Agents of the respective towns were in attendance upon the muster-in of their quotas, of which the adjutant general was informed by letter or telegram, giving the names of those persons mustered in to fill the several quotas. It was the duty of the adjutant general, imposed by law, to settle with such enlisted men, in behalf of the state, up to the time of their muster-in. This required the attendance of a clerk or agent of the adjutant general, and the payment was reported to the office, so that the adjutant general had reliable information from day to day, and from week to week, of the progress and completion of the work of filling the quotas of the several towns, and this long before the muster-in roll was received at his office. But the record on the books, was not made, often, till weeks after all the muster rolls had been received. Under such circumstances, it would not be strange if the adjutant general should, upon his records, fill the quota with such men as had been enlisted, mustered in, and paid by the town, *to fill such quota,* of which he had notice. And such official action could not be deemed " capricious " or " mistaken." In *Atwood* v. *Lincoln,* 44 Vt. 332, we have said that, " it has been repeatedly adjudged by this court, that a town that fills its quota in good faith, is not liable to pay a bounty to others who may have enlisted and been mustered in at an earlier date, but of which the town had no notice, where such enlistments did not apply on the quota." In that case the jury had found that " the

plaintiff had no knowledge of the vote of the town, and did not act on the faith of it when mustered into the service ; and that the defendant town filled the quota with other men, without notice of the plaintiff's enlistment or muster-in." All those facts appear in this case. And it is without precedent in any other class of cases, to allow a party to recover upon such a state of facts. It is *dooming* a town that has discharged its full duty, and without fault. In *Witherell* v. *Fletcher*, 42 Vt., PIERPOINT, CH. J., says : " The plaintiff took no steps to give notice to the officers of the town, or cause such notice to be given, that they, by the exercise of reasonable diligence and caution, could have learned of his enlistment.  *  *  This court has never held that no notice was necessary in this class of cases."

The case of *Seymour* v. *Marlboro*, 40 Vt. 171, was like this in its general features and facts. The plaintiff in that case, re-enlisted in the field, and was mustered in to the credit of Marlboro, of which the selectmen had notice ; and the adjutant general decided that he could not apply on the quota of that town : "Thereupon the quota was filled with other men, and the plaintiff not applied on it." The court say : " It is not apparent to us why he could not have been counted and applied. He was not ; and the town filled the quota with other men." And the plaintiff was not allowed to recover. This case is naked of any suggestion that plaintiff's intestate re-enlisted in the faith or expectation of a promised bounty. The warning for the meeting on the 30th of November, 1863, limited the town to the provision for the quota under the call of the president. The quota was twenty-nine men. The selectmen enlisted that number and filled the quota. The whole duty under the vote was discharged, and no further liability could be, rightfully, incurred. The plaintiff's intestate remained a credit to the town, to apply on future calls ; and on the 5th of July, 1864, the town voted him and those in like condition a bounty of $300. He drew his order for this, stating it to be the " amount of bounty due me as a volunteer from the town of Windsor." We do not say that the plaintiff would be estopped by this acknowledgment and receipt. But if he was entitled to *this* bounty, he was not to the other ; and his election to receive the

one as " the amount of bounty due him," ought, in reason and justice, to bar him from claiming the bounty under the former vote. It is, at least, most cogent evidence that he claimed nothing under the vote of November 30th.

Judgment affirmed.